Opinion of
the Court.
THIS is an appeal from a judgment rendered in favor of the appellees, in an action of ejectment brought against them in the circuit court, by the appellant.
The declaration contains two counts, one on the demise of Chiles, and the other on the demise of William Hays, Daniel Hays, Greenup Hays, Lewis Jones, Melinda Jones his wife, Isaac Vanbibber, Elizabeth Vanbibber, William Dodson, John Dodson, Greenup Dodson, Drusilla Dodson and Martha Dodson. In the progress of the trial, which was had on the general issue, in the circuit court, the appellant, among other things, produced in evidence a power of attorney, purporting to have been given in the Missouri Territory, by William Hays, Daniel Hays, Boone Hays, Lucy Dodson, Lewis Jones, Melinda Jones, Isaac Vanbibber, Elizabeth Vanbibber and Greenup Hays, to James Davis of Clarke county, Kentucky, and authenticated and recorded in the manner prescribed in the act of February 1812, [2 Digest Laws Ky. 1048,] entitled, ‘‘an act empowering non-resident femes covert to convey lands and tenements by attorney in fact;” and after proving that the lessors in the demise contained in the second count of the declaration, were the heirs and legal representatives of William Hays, deceased, except Greenup and Drusilla Dodson, who were not known, by the witness, to be the children of Mrs. Dodson, deceased; but he proved, that Mrs. Dodson was one of the heirs of William Hays, deceased, and that she died leaving some children, all of whom, the witness knew to be correctly named in the declaration, except the said Greenup and Drusilla.
The appellees moved the court to instruct the jury to find as in case of a non suit, on the ground, that as all of the persons named as lessors in the second count of the declaration, were not proved to be the heirs of William Hays, deceased, and were not shown to have any interest in the land in contest, there could be no recovery under that count; and on the further ground, that the power of attorney was not so authenticated, as *421 to be evidence of any title in Chiles, who claims through a conveyance made by the attorney, Davis, under that power. But the court overruled the motion, and instructed the jury, that they ought not to find a verdict on the second count in the declaration, unless all of the persons named as lessors, were proved to be the heirs of William Hays, deceased, and that the power of attorney was only sufficient to prove that the daughters of Hays, who were femes covert, had executed the said power of attorney, and that their interest was properly conveyed to Chiles.
In such case, the record of the suit by which he was evicted, and the sheriff’s return of his dispossession, are evidence of these facts, although the person from whom he purchased was no party to the suit.
Nor will the circumstance of judgment having been obtained by default, prejudice the defendant, if it shall appear that the adversary claimant had the eldest patent, & that the land in question was included in it.
Whether, or not, the court was correct in its instructions to the jury, is the first question to which the attention of this court is directed, by the assignment of error.
And it should be recollected, that in the second count of the declaration, the demise appears to be joint in the names of all the persons therein mentioned, and there was no attempt to prove any title in those persons, except that which they derived from William Hays, deceased. The court cannot, therefore, have erred in instructing the jury, that there could be no recovery under that count, unless all of the lessors therein named, were proved to be the heirs of William Hays, deceased. Without such proof, all of the lessors cannot have been shown to possess any title to the land in contest; and it is well settled, that under a joint demise, all of the lessors must have title, or none can recover the possession.
And with respect to the opinion expressed by the court, on the effect of the power of attorney, there is no difficulty. That power is not authenticated so as to make it admissible evidence for any purpose, except that of authorizing the conveyance of the interest of femes covert, and, consequently, the court cannot have erred in confining its operation to that description of interest.
It moreover appears, that evidence was introduced on the trial in the circuit court, showing that the ancestor of the appellees obtained possession of the land in contest, under a purchase from the intestate, Hays, in his lifetime; and the appellees produced in evidence, the record of a judgment recovered in an action of ejectment, on the demise of James French, and the writ of habere facias which issued thereon, together with the *422 sheriff’s return in the following words: “I executed the within writ, by turning out the within named William Bridges, and delivering possession to William French, agent of the plaintiff, James French, on the 7th of October, 1799.” The action of ejectment appears to have been commenced by French, whilst Bridges was in possession, under an executory contract with Hays, for a conveyance, and the declaration was served on Bridges; but he seems to have made no defence, and judgment was rendered against the casual ejector by default. The appellees also read in evidence, title papers, showing that French’s title was adverse and paramount to that of Hays; and after proving that the title of French covers the land in contest, and that his ancestor, since the possession was delivered by the sheriff, purchased the land of French, moved and obtained the court’s instructions to the jury, that if they should be of opinion, that William Bridges, the ancestor of the appellees, was dispossessed in virtue of the judgment in favor of French, the possession which he had gained of Hays, was thereby interrupted, and that he had a right to buy and take protection under French’s claim. The appellant then moved the court to instruct the jury, that if they believed Bridges settled under the claim of Hays, the appellees could not protect themselves under the claim of French, by making a purchase and taking possession under him; but the court failed to give the instructions as asked, and instructed the jury, that a tenant could not dispute the title of his landlord, except by the judgment of a court of law, or order or decree of a court of equity.
In revising the opinion given by the court, on these several motions, it is material barely to enquire, whether, or not, the appellees, in consequence of their ancestor having obtained possession of the land from Hays, are now estopped from controverting the title of Hays, although their ancestor was deprived of the possession derived from Hays, under the judgment recovered by French? We say, deprived of the possession received from Hays; for the return of the sheriff on the writ of habere facias possessionem, proves that Bridges was not only dispossessed, but that the possession was then delivered to French’s agent. It is true, Hay's was no party to the proceedings in ejectment by French, and it is conceded, as was contended in argument, that, gen *423 erally speaking, records are not evidence against persons neither parties nor privies thereto; but it should be recollected, that the record was not introduced for the purpose of showing that French had the paramount title. It was introduced barely for the purpose of proving the fact of Bridges’ being dispossessed; and it was as competent to prove that fact, as though Hays, or those claiming under him, had been parties to the record.
After being thus dispossessed, we cannot admit the propriety of thereafter precluding Bridges, or those claiming under him, from either purchasing claim of others, or disputing the title of Hays. We subscribe to the doctrine, which precludes those who may have received possession, either as tenants or under a contract for the purchase of lands, from controverting the title of the person from whom the possession was received, so long as that possession is retained under the contract by which it was gained; but after the possession is once interrupted, by the process of a court of competent jurisdiction, the priority of possession is destroyed, and the possession cannot thereafter be admitted to impose any restraint on the right of the party to purchase from others, or dispute the title of him from whom the possession was originally obtained. It is not designed to say, that the effect of possession taken under the process of the court, might not have been done away, by showing that the process was used by the parties merely to cover their fraudulent purpose, in changing the possession; but in this case, there is nothing from which such a fraud can be rationally inferred. The writ of possession may have issued irregularly; but though irregular, the effect on the possession of Bridges was the same; and as the proof is abundant, to show the title of French is paramount to that of Hays, the circumstance of Bridges not having defended the ejectment, or questioned the correctness of the process of execution, ought not to be ascribed to a fraudulent design to prejudice the interest of Hays.
It remains only to enquire, whether the court decided correctly in refusing to award a new trial. The new trial was asked on various grounds; but all of them have been already noticed, in responding to the questions raised in the progress of the trial, except that of the verdict being against evidence; and with respect to that, it is sufficient to remark, that the title of French is *424 paramount to that under which the plaintiffs claim, and as the defendants were not precluded from availing themselves of French’s title, the verdict in their favor ought not to be disturbed.
Judgment affirmed.